1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11   DONOVAN DIAZ,                         Case No.:  3:20-cv-02147-GPC-BGS
     CDCR #AU-5079,
12                                         **ORDER:**
                              Plaintiff,
13                                         **1)  GRANTING MOTION TO**
                   vs.                     **PROCEED IN FORMA PAUPERIS**
14                                         **[ECF No. 2]**
15
16   RAYMOND MADDEN, Warden;               **2)  DENYING MOTION TO**
     RHONDA A. BUMGART, Litigation         **APPOINT COUNSEL**
17   Coordinator; NOE TELLES, Litigation   **[ECF No. 6]**
     Coordinator; D. LOOP, Correctional
18   Lieutenant,                           **AND**
19                              Defendants.
20                                         **3)  DISMISSING COMPLAINT FOR**
                                           **FAILING TO STATE A CLAIM**
21                                         **PURSUANT TO**
                                           **28 U.S.C. § 1915(e)(2)(B)(ii)**
22                                         **AND § 1915A(b)(1)**
23
24

25        Plaintiff Donovan Diaz, incarcerated at the Centinela State Prison ("CEN") in

26   Imperial, California, has filed a pro se civil rights Complaint pursuant 42 U.S.C. § 1983.

27   *See* Compl., ECF No. 1. Plaintiff claims the Warden, a Correctional Lieutenant, and two

28   Litigation Coordinators at CEN violated his Eighth and Fourteenth Amendment rights in

2015 when they failed to provide him complete and unfettered access to his "entire case file" and "legal documents" related to his criminal trial, portions of which were stored on CD-ROMS provided to him by his former defense counsel. *See id.* at 2-9. Plaintiff seeks $40,000 in general and punitive damages and an injunction preventing Defendants "from violating other prisoners['] rights in the future." *Id.* at 10.

Plaintiff did not prepay the $400 civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), as well as a Motion to Appoint Counsel pursuant to 28 U.S.C. § 1915(e)(1). *See* ECF Nos. 2, 6.

## I.    Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the

---

[1] For civil cases like this one, filed before December 1, 2020, the civil litigant bringing suit must pay the $350 statutory fee in addition to a $50 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June. 1, 2016). The $50 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id.* This administrative fee increased to $52 for civil cases filed on or after December 1, 2020, but that portion still does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).

6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity, as well as a supplemental prison certificate verifying his available balances. *See* ECF No. 4 at 1, 3-4. These documents show that although Plaintiff carried an average monthly balance of $133.43 and had $153.33 in average monthly deposits to his trust account for the six months preceding the filing of this action, he had an available balance of zero at the time of filing. *Id.* at 1, 3.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses a partial filing fee of $30.66 pursuant to 28 U.S.C. § 1915(b)(1). However, it declines to impose that fee at this time because Plaintiff's prison certificate indicates he currently has "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or her designee, to collect

the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.    Motion for Appointment of Counsel

Plaintiff has also filed a Motion for Appointment of Counsel pursuant to 28 U.S.C. § 1915(e)(1) because he is unable to afford a lawyer and claims his imprisonment, particularly with current COVID-19 restrictions placed on inmates housed at CEN will limit his ability to litigate. *See* ECF No. 6 at 1–2.

There is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

As currently pleaded, Plaintiff's Complaint demonstrates neither the likelihood of success nor the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). *See Terrell*, 935 F.3d at 1017; *Palmer*, 560 F.3d at 970. First, while Plaintiff may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims which are not legally "complex." *Agyeman*, 390 F.3d at 1103. Second, for the reasons discussed below, Plaintiff's Complaint requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A, and it is simply too soon to tell whether he will be likely to succeed on the merits of any potential constitutional claim. *Id.*

4

Furthermore, while the Court is sympathetic to the difficulties Plaintiff is likely experiencing due to the COVID-19 pandemic, minimal-to-no access to the law library does not establish exceptional circumstances. Indeed, lacking legal expertise is the norm rather than an "exceptional circumstance" in pro se civil rights cases. *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990) (denying appointment of counsel where plaintiff complained that he had limited access to law library and lacked a legal education). Moreover, courts in the Ninth Circuit have declined to find that challenges presented by the COVID-19 pandemic alone establish exceptional circumstances. *See, e.g.*, *Pitts v. Washington*, No. C18-526-RSL-MLP, 2020 WL 2850564, at *1 (W.D. Wash. June 2, 2020) (denying motion for appointment of counsel because, "[a]lthough Plaintiff contends he is unable to access the law library because of social distancing, this bare assertion does not justify the appointment of counsel at this time, nor does the COVID-19 pandemic."); *Faultry v. Saechao*, No. 18-cv-1850-KJM-AC-P, 2020 WL 2561596, at *2 (E.D. Cal. May 19, 2020) (denying motion for appointment of counsel and explaining that "[c]ircumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances supporting appointment of counsel . . .. The impacts of the COVID-19 health crisis on prison operations are also common to all prisoners."); *see also Snowden v. Yule*, No. 2:17-cv-2167-TLN-AC-P, 2020 WL 2539229, at *1 (E.D. Cal., May 19, 2020) (stating that "limited access to the prison law library and resources, particularly during the current COVID-19 health crisis" is a circumstance that plaintiff shares with many other prisoners); and *Raya v. Barka*, No. 3:19-cv-2295-WQH-AHG, 2020 WL 5877848, at *3 (S.D. Cal., Oct. 2, 2020) (noting that "courts in this circuit have declined to find that the COVID-19 pandemic establishes exceptional circumstances") (citing *Pitts*, 2020 WL 2850564, at *1, and *Montgomery v. Crane*, No. 18-cv-02911-RM-NYW, 2020 WL 2848149, at *1 (D. Colo. June 2, 2020) (denying motion for appointment of counsel, and finding that plaintiff's inability to access the law library due to the COVID-19 pandemic was not an exceptional circumstance that justified appointment of counsel because plaintiff could have requested an extension to file

his responsive briefing).

Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 6) without prejudice. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, and did not show likelihood of succeed on the merits).

## III.   Sua Sponte Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

### 1.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

/ / /

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

2.   Plaintiff's Factual Allegations

On August 27, 2015, Plaintiff claims Charles Lindner, his former defense counsel, mailed 40 CD-ROMs "containing discovery and other materials" related to his criminal trial in *People v. Diaz*, Los Angeles County Superior Court Case No. BA387967 to him at CEN.[2] *See* Compl. at 3. Plaintiff claims Lindner did not send the entire case file in paper format because Litigation Coordinator Bumgart advised Lindner that Plaintiff's paper records would exceed the storage limits set by CDCR regulations, and would be destroyed.[3] *Id.* at 3-4; *see also* Pl.'s Ex. A at 12-13.

/ / /

---

[2] In a letter from Linder to Plaintiff dated July 6, 2015, which Plaintiff attaches as an exhibit, Linder explained that his complete file "measured 1 foot long by 1 foot wide by 3 feet high." *See* Compl. at 12.

[3] *See* Compl., Pl.'s Ex. E at 27 (citing "Title 15, section 3161.").

> Inmate-owned legal materials/documents, law books and papers shall be limited to the availability of space authorized by section 3190(b) for personal property in the inmate's quarters/living area except as specified in this section. Inmates may possess up to one cubic foot of legal materials/documents related to their active cases, in excess of the six cubic feet of allowable property in their assigned quarters/living area. Legal materials/documents, law books and papers in excess of this limitation shall be disposed of pursuant to section 3191(c). Inmates may request the institution/facility store excess legal materials/documents related to their active cases(s) when such materials/documents exceed this one cubic foot additional allowance. Inmate-owned law books in excess of the additional allowance shall not be stored by the institution/facility.

Cal. Code Regs. tit. 15, § 3161.

7

Plaintiff contends that upon receipt, the CD-ROMs were held in CEN's Receiving & Release ("R&R") Unit for storage with his other legal materials. *Id.* at 3. However, he was unable to retrieve the information stored on the CDs because he is not permitted access to a computer, and "prison officials were largely unsuccessful in their attempts to open the CD-ROMs." *Id.*; *see also* Pl.'s Ex. B at 16.

In March 2016, Plaintiff requested assistance from another Litigation Coordinator, Defendant Telles, who requested that a Facility Captain "look into [his] request." *Id.* at 5. Telles confirmed Plaintiff had the opportunity to "access and view [his] disks," and claimed "Centinela ha[d] made a good faith effort to assist," but Plaintiff remained dissatisfied and filed CDCR 602 Log No. 16-00392 on March 24, 2016. *Id.* This grievance was denied at both lower levels of administrative review, and again denied at the third level by Warden Madden on August 30, 2016. *Id.* at 4, 9.

Almost three years later, on June 27, 2019, Plaintiff was interviewed by Defendant Sgt. Loop regarding the 40 CDs that remained stored in CEN's R&R Unit. *Id.* at 5. Plaintiff requested and was permitted to inspect and create a log of the titles listed on the CDs, and he was issued a property receipt. *Id.* However, he remained unable to view the contents of the CDs because they were "protected or encrypted." *Id.* at 5-6; *see also* Pl.'s Ex. C at 19. Plaintiff was depressed and "debated if he should file a grievance against Sgt. Loop," but "[i]n the end," decided against it. *Id.* at 6.

Ultimately, in December 2019, CEN amended its local Department Operations Manual (DOM) to "allow inmate use of laptop computers in the law libraries, to review legal compact discs (CD) and/or digital versatile discs (DVD)." *Id.* at 6; *see also* Pl.'s Ex. C at 21. Plaintiff now contends, however, that Defendants Bumgart, Telles, Madden, and Loop violated his Eighth and Fourteenth Amendment rights by failing to ensure this type of access sooner, and that this "unduly hampered [the] prosecution" of his "more than seventy-five state habeas and mandate petitions and various motions in the Los Angeles County Superior Court, California Court of Appeal, and California Supreme Court." *Id*. at 6-8.

3.   <u>Analysis</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015). Plaintiff alleges all Defendants were employed as correctional officials at CEN and acted in their individual and officials capacities when allegedly depriving him of the ability to access the contents of his CDs. *See Atkins*, 487 U.S. at 48 ("State employment is generally sufficient to render the defendant a state actor."). Therefore, the Court next considers whether Plaintiff has alleged a plausible constitutional violation with respect to any of the named Defendants.

a.   *Due Process*

Plaintiff first claims Defendants violated his right to due process under the Fourteenth Amendment by failing to ensure his access to the digital contents of the CD-ROMs provided by his former defense counsel. *See* Compl. at 3-4. The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993). When analyzing a due process claim, courts must "first ask whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Only "if so, [does the court next] ask whether the procedures followed by the State were constitutionally sufficient." *Id.*; *see also Nall v. Williams*, __ Fed. Appx.__, No. 19-16894, 2021 WL 276383, at *1 (9th Cir. Jan. 27, 2021) (affirming dismissal of prisoner's Fourteenth Amendment due process claims pursuant to *Swarthout*.)

Plaintiff has a protected interest in his personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, he does not allege Defendants deprived him of his

CDs.[4] In fact, Plaintiff admits he was permitted to store, access, and index them in CEN's R&R Unit on several occasions. *See* Compl. at 5-6 & Ex. C at 19. Instead, he contends Defendants violated his due process rights by failing to provide him with the additional means by which he might retrieve whatever protected or encrypted digital information was saved on those CDs. Thus, to the extent he claims Defendants deprived him of a liberty interest to either access a computer or some other unspecified decryption device, Plaintiff also fails to state a plausible claim for relief under the Fourteenth Amendment. *Cf. Rhoden v. Dep't of State Hosps.,* No. 1:18-CV-00101-NONE-SAB PC, 2020 WL 5737019, at *11 (E.D. Cal. Mar. 20, 2020) (finding civil detainee had no protected liberty interest to own "electronic and storage devices (personal laptop computer, tablet, other electrical devices, thumb drives/flash drives/ microchips, C/Ds and DVDs.")*, report and recommendation adopted,* 2020 WL 4048489 (E.D. Cal. July 20, 2020). In addition, "[n]o court has found that prisoners have a constitutional right to possess personal computers or items that are similar to personal computers which are capable of accessing the internet in their cells." *Cerniglia v. Price*, No. 1:17-cv-00753-AWI-JLT (PC), 2017 WL 4865452, at *3-4 (E.D. Cal. Oct. 27, 2017) (citing *Endsley v. Luna*, No. CV 06-04100 DSF (SS), 2008 WL 3890382, at *3 (C.D. Cal. May 23, 2008)); *cf. Davis v. Small*, 595 Fed. Appx. 689, 691 (9th Cir. 2014) (The Due Process Clause itself does not "give rise to a protected liberty interest in ... phone ... privileges.").

For these reasons, the Court finds Plaintiff has failed to state a plausible Fourteenth Amendment claim to relief with respect to his CDs, their storage, or his ability to access their contents, and dismisses those claims as to all Defendants sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

---

[4] Even if Defendants were alleged to have refused to store Plaintiff's CDs in the R&R Unit, "there is a difference between the right to own property and the right to possess property while in prison." *Velaquez v. Ahlin*, No. 1:18-cv-00053-LJO-SAB (PC), 2018 WL 195941, at *8 (E.D. Cal. Apr. 25, 2018) (citing *Search v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002); *see also Knight v. Yarborough*, No. CV 03-01210-AG (VBK), 2011 WL 4550190, at *18 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish.").

b.     *Eighth Amendment / Access to Courts*

In addition to his due process claims, Plaintiff contends Defendants Madden, Telles, and Loop violated his right to be free form cruel and unusual punishment under the Eighth Amendment. *See* Compl. at 8. Specifically, Plaintiff claims these Defendants acted with "deliberate indifference" by "fail[ing] in a good faith effort" to ensure his "access to [the] legal documents contained on [his] 40 CD-ROMs." *See* Compl. at 7-8. Plaintiff claims this caused "irreparable harm" and "unduly hampered his prosecution" of "more than seventy-five state habeas and mandate petitions" which he filed on Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court. *Id.* at 7.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but "not every injury that a prisoner sustains while in prison represents a constitutional violation." *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Instead, a prisoner claiming an Eighth Amendment violation must allege facts to plausibly show: (1) the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials acted with deliberately indifference to a serious risk to his health or safety in allowing that deprivation to take place. *Farmer*, 511 U.S. at 834; *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

Defendants' failure to provide Plaintiff with the ability to view digital files stored on CDs provided to him by his former defense counsel does not rise to the level of an "objectively, sufficiently serious" deprivation under the Eighth Amendment. *Farmer*, 511 U.S. at 834. Post-conviction "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347 (1981). But to "the extent that …

conditions are [merely] restrictive [or] even harsh, they are part of the penalty that criminal offenders pay for their offenses against society," and do not offend Eighth Amendment principals. *Rhodes*, 452 U.S. at 347. "[O]nly minimal life necessities" like food, clothing, shelter, medical care, and safety are protected by the Eighth Amendment. *Puckett v. Houston*, No. 2:17-CV-0640 KJN P, 2017 WL 2619121, at *3 (E.D. Cal. June 16, 2017) (finding deprivation of prisoner's "certain privileges, including packages, TV, radio, special purchases, and [] property," were not "objectively serious deprivations" because they did not "constitute the denial of life's minimal necessities."). Allegations involving lost property simply "do not impinge on a constitutionally protected basic human need and do not rise to the level of cruel and unusual punishment." *Obataiye-Allah v. Gilbertson*, No. 2:19-CV-00135-JR, 2019 WL 2303844, at *2 (D. Or. May 29, 2019).

Nor has Plaintiff alleged facts sufficient to plausibly show that any named Defendant "kn[ew] of and disregard[ed] an excessive risk to [his] health to a serious risk to his health or safety" when they allegedly failed to retrieve the documents stored on his CDs for him. *See Farmer*, 511 U.S. at 837; *see also Moore v. Brown*, No. 1:10-CV-0806 LJO DLB, 2012 WL 1413676, at *5 (E.D. Cal. Apr. 20, 2012) (finding prisoner's allegation that officials denied him computer access with "deliberate indifference" insufficient to state an Eighth Amendment claim). In fact, Plaintiff contends Defendants acted with "deliberate indifference" not with respect to any condition of his confinement, but instead with respect to his efforts "overturn[] his illegal conviction" itself. *See* Compl. at 8. As such, while he plainly fails to state a plausible claim for relief under the Eighth Amendment, the Court will consider whether his factual allegations are sufficient to plead a plausible access to courts claim as well. *See Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").

Prisoners have a First Amendment right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jones v. Williams*,

791 F.3d 1023, 1035 (9th Cir. 2015). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing [them] with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. But the right does not require a particular methodology. *Lewis*, 518 U.S. at 356. It guarantees the "*capability* of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* (emphasis added). The right is further limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. It does "not create an abstract, freestanding right to … legal assistance," *id.* at 351, and does not "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id.* at 355.

However, claims for denial of access to court may arise from the frustration or hindrance of "a litigating opportunity yet to be gained," or from the loss of a suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *see Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference"), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the threshold requirement for any claim based on the denial of access to court is the allegation of an "actual injury." *See Lewis*, 518 U.S. at 351–53; *Silva*, 658 F.3d at 1104. "[A]ctual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

As pleaded, Plaintiff's Complaint fails to allege facts sufficient to plausibly show that Defendants Madden, Bumgart, Telles, or Loops personally frustrated or hindered him in any litigating opportunity yet to be gained with respect to his direct criminal appeal or any non-frivolous habeas petition or civil rights suit, or caused him to lose any non-frivolous case yet to be tried. *Christopher*, 536 U.S. at 412–15; *Silva*, 658 F.3d at 1102; *see also Williams v. Ryan*, No. CV 20-00068-PHX-MTL (DMF), 2020 WL 1188337, at *4

(D. Ariz. Mar. 12, 2020) (dismissing prisoner's access to courts claims sua sponte pursuant to 28 U.S.C. § 1915A based on his failure to "describe the information on his legal CDs or why the CDs were required to prepare a Rule 32 petition.").

In fact, Plaintiff admits his federal habeas corpus petition challenging the validity of his state court conviction is "currently pending" in the Central District of California, and he has "*filed* more than seventy-five state habeas and mandate petitions" in the state court at every level of review. *See* Compl. at 7 (emphasis added); *see also Lewis*, 518 U.S. at 360 (noting that "the Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts."). And while Plaintiff contends the "lack of access to the CD-ROM materials" provided to him by his former trial counsel "unduly hampered [the] prosecution of his habeas claims," *see* Compl. at 7, an exhibit he attaches to his Complaint belies any plausible assertion of actual injury. *See Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936. This exhibit, an Order issued in *Diaz v. Madden*, C.D. Cal. Civil Case No. 19-1681 CAS (FFM) by the Honorable Frederick F. Mumm and dated July 2, 2019, appoints the Federal Public Defender to represent Plaintiff in his pending habeas case "for the limited purpose of (1) obtaining the material on the CD-ROMs provided to [Plaintiff] by his criminal trial counsel; and (2) to the extent feasible within prison regulations, providing such material, or at least a portion thereof, to [him]." *See* Compl., Ex. B at 15-17; *see also Singanonh v. Langslet*, No. 2:18-CV-00159-WBS-DMC P, 2020 WL 7239586, at *6 (E.D. Cal. Dec. 9, 2020) (finding no actual injury where prison officials allegedly failed to permit inmate copies of documents but inmate failed to further demonstrate any negative impact with respect to his  appeal); *Williams v. County of Ventura*, No. CV 07-7655-AHM (MLG), 2009 WL 4110113, at *10, 2009 U.S. Dist. LEXIS 110167, at * 26–27 (C.D. Cal. Aug. 7, 2009) (dismissing First Amendment access-to-courts claim based on denial of access to legal materials because "although Plaintiff … alleged that he has missed deadlines for filings in the federal and state courts as a result of the withholding of his legal materials, he [did] not state[] whether his omissions led to the dismissal of his actions or any other adverse consequences.").

Thus, because "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim" is a necessary element of any access to courts violation, *see Lewis*, 518 U.S. at 348, *Iqbal*, 556 U.S. at 678, *Jones*, 393 F.3d at 936, and Plaintiff's failure to allege an actual injury with respect to either his pending habeas corpus petition or any other non-frivolous appeal or civil rights action is "fatal," *see Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a non-frivolous legal claim had been frustrated is fatal.") (internal quotation marks omitted), the Court must also dismiss any purported access to courts claim sua sponte for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

## IV.   Conclusion and Orders

For the reasons discussed, the Court:

1)   **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2)   **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3)   **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4)   **DENIES** Plaintiff's Motion to Appoint Counsel pursuant to 28 U.S.C. § 1915(e)(1) (ECF No. 6).

/ / /

/ / /

5)     **DISMISSES** Plaintiff's Complaint sua sponte and in its entirely based on his for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

6)     **GRANTS** Plaintiff 60 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted, if he can. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 60 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  February 22, 2021

Hon. Gonzalo P. Curiel
United States District Judge